IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                              :
**DOUGLAS PYLE**                              :
**St. Davids, Pa  19087**                     :     CIVIL ACTION NO.
                                              :
          **Plaintiff,**                      :
                                              :     **JURY TRIAL DEMANDED**
            **v.**                            :
**COLUMBIA MANAGEMENT**                        :
**INVESTMENT ADVISORS LLC**                    :
**Ameriprise Financial Center**               :
**Minneapolis, MN 55474**                     :
                                              :
          **and**                             :
                                              :
**AMERIPRISE FINANCIAL, INC.**                 :
**5222 Ameriprise Financial Center**          :
**Minneapolis, MN 55474**                     :
                                              :
                                              :
          **Defendants.**                     :
                                              :
_____            :

## COMPLAINT

## I.    INTRODUCTION

Plaintiff, Douglas Pyle, brings this action against his former employers,

Columbia Management Investment Advisors, LLC and Ameriprise Financial, Inc.,

for age discrimination in violation of the Age Discrimination in Employment Act,

29 U.S.C. §621et seq. ("ADEA"), and the Pennsylvania Human Relations Act, as

amended, 43 P.S. §951, et seq.  ("PHRA")  in connection with the discriminatory

conduct to which Plaintiff was subjected.  Plaintiff seeks damages, including

compensatory and liquidated damages and all other relief this Court deems appropriate.

## II.  PARTIES

1. Plaintiff, Douglas Pyle, is an individual and a citizen of the Commonwealth of Pennsylvania.

2. Plaintiff was continuously employed by Defendants or their predecessor(s) from April 8, 1996 until Defendants terminated his employment on March 27, 2012.

3. Plaintiff was sixty-one (61) years of age at the time that Defendants terminated his employment.

4. Defendant Columbia Management Investment Advisors, LLC ("CMIA") is a wholly owned subsidiary of Defendant Ameriprise, Inc. and has a principal place of business at 5222 Ameriprise Financial Center, Minneapolis, MN 55474.

5. Defendant CMIA is incorporated in the state of Delaware.

6. Defendant Ameriprise Financial, Inc. ("Ameriprise"), is a Delaware corporation with a principal place of business at 5222 Ameriprise Financial Center, Minneapolis, MN 55474.

7. At all times relevant hereto, Defendant Ameriprise owned and controlled the operations of Defendant CMIA.

8. Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania.

9.      At all times material hereto, Defendants each employed more than twenty
        (20) employees.

10.     At all times material hereto, Defendants acted by and through their
        authorized agents, servants, workmen, and/or employees acting within the
        course and scope of their employment with Defendant and in furtherance
        of Defendants' business.

11.     At all times material hereto, Defendants acted as an employer within the
        meaning of the statutes which form the basis of this matter.

12.     At all times material hereto, Plaintiff was an employee of Defendants
        within the meaning of the statutes which form the basis of this matter.

**III.   <u>JURISDICTION AND VENUE</u>**

13.     The causes of action which form the basis of this matter arise under the
        ADEA and the PHRA.

14.     The District Court has jurisdiction over Count I (ADEA) pursuant to 29
        U.S.C. §626(c) and 28 U.S.C. §1331.

15.     The District Court has jurisdiction over Count II (PHRA) pursuant to 28
        U.S.C. §1367.

16.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

17.     On or about April 5, 2012, Plaintiff filed a Charge of Discrimination with the
        Equal Employment Opportunity Commission ("EEOC"), complaining of
        acts of discrimination alleged herein.  This Charge was cross-filed with the
        Pennsylvania Human Relations Commission ("PHRC").  Attached hereto,

incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination.

18.   On or about July 25, 2012, Plaintiff filed a second Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination and retaliation alleged herein.  This Charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").  Attached hereto, incorporated herein and marked as Exhibit "2" is a true and correct copy of Plaintiff's second EEOC Charge of Discrimination.

19.   On or about May 28, 2013, The EEOC issued to Plaintiff Notices of Right to Sue for his Charges of Discrimination.  Attached hereto, incorporated herein and marked as Exhibit "3" are true and correct copies of those notices (with personal identifying information redacted).

20.   Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   **FACTUAL ALLEGATIONS**

21.   Plaintiff was continuously employed by Defendants or a predecessor of Defendants since April, 1996.

22.   On or about April 8, 1996, Plaintiff was hired by Radnor Capitol as a Portfolio Manager. After U.S. Trust acquired Radnor Capitol, Plaintiff became an employee of U.S. Trust.  After Charles Schwab acquired U.S. Trust, Plaintiff became an employee of Charles Schwab.  After Bank of America acquired Charles Schwab, Plaintiff became an employee of Bank

of America, in its Columbia Management division.  After Ameriprise
acquired the Columbia Management Division of Bank of America, Plaintiff
became an employee of Defendants.

23. Since working at Defendants, Plaintiff held the position of Managing
Director, reporting to Robert McConnaughey, Head of Equities.

24. At all times relevant, Mr. McConnaughey reported to Colin Moore, Chief
Investment Officer of Columbia Management Group.  Mr. Moore reported
to William F. ("Ted") Truscott, CEO, U.S. Asset Management.  Mr.
Truscott reported to James Cracchiolo, Chairman and Chief Executive
Officer of Ameriprise.

25. Like Plaintiff, Mr. McConnaughey and Mr. Moore worked in the Columbia
Management division of Bank of America before Ameriprise purchased
that business.

26. Plaintiff was well qualified for his position.

27. At all times material hereto, Plaintiff performed his job duties in a highly
competent manner.  For example, and without limitation:

    i. In April, 2010, Mr. Moore commended Plaintiff on his candor
    and integrity, and told Plaintiff he was a credit to the company.

    ii. In December 2010 Mr. Moore sent Mr. Pyle a hand written
    note complimentary of his investment performance.

    iii. In February, 2011, Defendants awarded Plaintiff a
    discretionary bonus for his 2010 performance results.

    iv. In 2010, the fund Plaintiff managed was up thirty-one

percent (31%), significantly outperforming the benchmark index and his peer group.

      v.     In 2010, Plaintiff ranked in the top fifteen percent (15%) of all like portfolio managers in his category, small cap core funds.

      vi.    According to Morningstar mutual fund evaluators on June 30, 2011, Plaintiff's fund ranked in the top seventeenth percentile (17th %) for the ten year period he managed the fund, outperforming eighty-three percent (83%) of all similar managers out of a pool of 358 small cap funds.

      vii.    In the fourth quarter of 2011, Plaintiff's fund was ranked in the top sixth-11th percentile (6-11%) by Morningstar.

28.    On or about January 7, 2010, Mr. McConnaughey met with Plaintiff and told Plaintiff that Plaintiff was going to be terminated some time prior to May 5, 2010, the closing date of Ameriprise's purchase of Columbia Management from Bank of America.

29.    The only explanation offered by Mr. McConnaughey for the decision to terminate Plaintiff was that the company was planning to consolidate the number of mutual funds in anticipation of the number of funds post-acquisition.  No explanation was given as to why Plaintiff was selected for termination.

30.    At the time, Plaintiff was age fifty-nine (59).

31.    During the January 7, 2010 meeting, Plaintiff expressed to Mr. McConnaughey Plaintiff's belief that the decision to terminate Plaintiff's employment was based on Plaintiff's age.

32.   Plaintiff is substantially older than Mr. McConnaughey.

33.   Plaintiff was by far one of the oldest of approximately twenty (20) Managing Directors who reported directly to Mr. McConnaughey.

34.   Mr. McConnaughy did not deny that the decision to terminate Plaintiff was based on Plaintiff's age.

35.   Mr. McConnaughy asked Plaintiff how old he was, and when Plaintiff told Mr. McConnaughey that he was 59, Mr. McConnaughey asked when Plaintiff was going to turn sixty (60), which was a benchmark age for receiving benefits under the Bank of America pension program.

36.   Plaintiff told Mr. McConnaughey that he would turn sixty (60) in February, 2011.

37.   Mr. McConnaughey told Plaintiff that if Plaintiff agreed to a thirty-three percent (33%) pay cut and discretionary bonus, Plaintiff could remain employed by Defendants for one year, which would get Plaintiff past the benchmark age 60 for purposes of his Bank of America pension.

38.   Plaintiff agreed to Defendants' proposal, since Plaintiff did not want his employment terminated.

39.   Upon information and belief, Defendants did not require any younger employees to take a pay cut or be terminated from their employment with Defendants.

40.   On or about April 7, 2010, Plaintiff attended a meeting in New York scheduled by Mr. Moore.  During the meeting, Mr. Moore questioned Plaintiff about Plaintiff's intentions with respect to retirement.

41. Plaintiff told Mr. Moore that he planned to stay in the business for at least ten (10) more years.

42. On or about June 30, 2011, Plaintiff met with Mr. McConnaughey for Plaintiff's mid-year review. At the meeting, Mr. McConnaughey informed Plaintiff that he was going to be terminated. The reason given by Mr. McConnaughey was that Plaintiff's investments were "too volatile".

43. Defendant's stated reason for terminating Plaintiff was pretextual.

44. Defendants had long understood that Plaintiff's fund was based on a concentrated portfolio, long term performance and a relatively stable investor clientele, and that volatility was an inherent characteristic of Plaintiff's investment approach.

45. Notwithstanding Defendant's alleged concern about the volatility of Plaintiff's fund, Defendants extended Plaintiff's employment through December 31, 2011.

46. In or around late November, 2011, Defendants extended Plaintiff's employment through March 31, 2012.

47. In or around February, 2012, Defendants extended Plaintiff's employment through April 30, 2012.

48. On or about March 27, 2012, Defendants informed Plaintiff that he was being terminated effective April 27, 2012, due to a reduction in force.

49. The only other individuals terminated in the so-called reduction in force were a CM-Intermediate Portfolio Manager (age 55) and a CM-Sr. Equity Portfolio Manager Asst (age 52).

50.　After Plaintiff was terminated, responsibility for the management of Plaintiff's fund was transferred to substantially younger, less qualified individuals: George Myers (age 40); Brian Neigut (age 43); Wayne Collette (age 43) and Lawrence Lin (age 37).

51.　Upon information and belief, Defendants had a pattern and practice of terminating qualified older employees.  For example, and without limitation, in addition to terminating Plaintiff, a CM-Intermediate Portfolio Manager (age 55), and a CM-Sr. Equity Portfolio Manager Asst (age 52) in the so-called reduction in force, Defendants terminated a Senior Portfolio manager, age sixty-eight (68) in or around April, 2011.  Defendants terminated a Senior Portfolio manager, age fifty-seven (57) in or around June 30, 2011.

52.　Defendant failed to provide a legitimate, non-discriminatory reason for terminating Plaintiff.

53.　Defendant's stated reason for terminating Plaintiff is pretextual.

54.　On April 4, 2012, Plaintiff filed a Charge with the EEOC regarding the age-based discrimination to which he was subjected by Defendants.  A courtesy copy of the Charge was sent to Defendants on the same day.

55.　After Plaintiff filed an EEOC Charge of Discrimination and sent Defendants a courtesy copy, Plaintiff was subjected to further adverse treatment, including, but not limited to the following:

　　　a)　Plaintiff immediately received a threatening and accusatory phone call from Mr. McConnaughey.

b)      Plaintiff stated to Mr. McConnaughey his belief that he was being threatened in retaliation for complaining to the EEOC regarding Defendants' age discriminatory conduct.  Mr. McConnaughey did not deny Plaintiff's statement.

c)      Within hours after Plaintiff filed his EEOC Charge and sent Defendants a copy, Defendants shut off Plaintiff's access to Defendant's computer system network, including Plaintiff's client files,  and changed the locks to the building where Plaintiff conducted his business.

56.    Defendant's conduct in shutting off Plaintiff's access to Plaintiffs office, work computer and client files prior to the effective date of his termination was in retaliation for Plaintiff's complaining of age discrimination.

57.    The retaliatory, adverse actions taken against Plaintiff after he complained of Defendants' discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

58.    Plaintiff's age was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including the reduction of his compensation and the termination of his employment.

59.    Plaintiff's complaining of discrimination was a motivating and/or determinative factor in connection with Defendants' retaliatory treatment of Plaintiff, including shutting off Plaintiff's access to his work computer, his office and his and client files prior to his termination.

60.    Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take appropriate corrective

and/or remedial measures to make the workplace free of discriminatory and retaliatory conduct.  .

61.  At all times material hereto, Defendants have made, and continue to make, employment decisions based on age and/or complaints of age discrimination.

62.  As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I - ADEA

63.  Plaintiff incorporates herein by reference all of the preceding paragraphs as if set forth herein in their entirety.

64.  By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the ADEA.

65.  As a direct and proximate result of Defendant's violation of the ADEA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

66.  Said violations were willful and warrant the imposition of liquidated damages.

67.   Plaintiff is now suffering and will continue to suffer irreparable injury and
      monetary damages as a result of Defendant's discriminatory and
      retaliatory acts unless this Court grants the relief requested herein.

68.   No previous application has been made for the relief requested herein.

## COUNT III - PHRA

69.   Plaintiff incorporates herein by reference all of the preceding paragraphs
      as if set forth herein in their entirety.

70.   By committing the foregoing acts of discrimination against Plaintiff,
      Defendant has violated the PHRA.

71.   Said violations were intentional and willful.

72.   As a direct and proximate result of Defendant's violations of the PHRA,
      Plaintiff has sustained the injuries, damages and losses set forth herein,
      and has incurred attorney's fees and costs.

73.   Plaintiff is now suffering, and will continue to suffer, irreparable harm and
      monetary damages as a result of Defendant's discriminatory and
      retaliatory acts unless and until this Court grants the relief requested
      herein.

74.   No previous application has been made for the relief requested herein.

## RELIEF

      WHEREFORE, Plaintiff seeks damages and legal and equitable relief in
connection with Defendant's improper conduct, and specifically prays that the
Court grant the following relief to the Plaintiff by:

        (a)     declaring the acts and practices complained of herein to be in violation of the ADEA;

        (b)     declaring the acts and practices complained of herein to be in violation of the PHRA;

        (c)     enjoining and permanently restraining the violations alleged herein;

        (d)     entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

        (e)     awarding damages to make the Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

        (f)     awarding compensatory damages to Plaintiff under the PHRA for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

        (g)     awarding liquidated damages to Plaintiff under the ADEA;

        (h)     awarding Plaintiff such other damages as are appropriate under the ADEA and the PHRA;

        (i)     awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and,

(j)     granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing Restitution for past violations and preventing future violations.

**CONSOLE LAW OFFICES LLC**

Dated: 7-31-13

BY: *Marjory P. Albee*
Marjory P. Albee (28150)
Stephen G. Console (36656)
1525 Locust St., 9th Floor
Philadelphia, PA 19102
(215) 545-7676
(215) 545-8211 (fax)

Attorneys for Plaintiff,
Douglas Pyle

# EXHIBIT 1

| SECOND CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | AGENCY<br>FEPA<br>x  EEOC | CHARGE NUMBER |
|---|---|---|

| STATE OR LOCAL AGENCY: ___PHRC___ | | | | |
|---|---|---|---|---|

| NAME (Indicate **Mr.**, Ms., Mrs.)<br>**Douglas Pyle** | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP<br>**St. Davids, PA 19087** | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OR LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Ameriprise Financial, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>**>10,000** | TELEPHONE (Include Area Code)<br>**800.535.2001** |
|---|---|---|

| STREET ADDRESS<br>**123 West Wayne Avenue** | CITY, STATE AND ZIP<br>**Wayne, PA 19087** | COUNTY<br>**Delaware** |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Race   Color   Sex   Religion   National Origin<br>**XX** Retaliation   **XX Age**   Disability   Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*          *Latest 4/10/2012* |
|---|---|

THE PARTICULARS ARE:

A.     1. Relevant Work History

I was hired by Radnor Capitol as a Portfolio Manager in or about April 8, 1996. Radnor Capital was sold to U.S. Trust, which was acquired by Charles Schwab, who then sold it to Bank of America, who then sold its Columbia Management division to Ameriprise on or about May 5, 2010. Since working at Ameriprise, I assumed the position of Managing Director, reporting to Robert McConnaughey, Head of Equities (42).* Mr. McConnaughey reports to Colin Moore, Chief Investment Officer of Columbia Management Group (60), who reports to William F. "Ted" Truscott, CEO, U.S. Asset Management (55). Mr. Truscott in turn reports to James Cracchiolo, Chairman and Chief Executive Officer.

Throughout my tenure with Respondent, I have been a loyal, dedicated and hard-working employee. In April, 2010, Mr. Moore commended me on my candor and integrity, stating that they are a credit to the company. In February, 2011, I received a fifty-thousand dollar ($50,000) discretionary bonus for my 2010 performance results.

*All ages herein are approximate.

| XI want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |
| x ~~Douglas Pyle~~<br>Date:          Charging Party *(Signature)*<br><br>July 24, 2012 | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

**EEOC Charge of Discrimination**
**Page 2 of 3**
**Douglas Pyle v. Ameriprise Financial**

I believe that Respondent discriminated against me based on my age (61).

I filed a Charge of Discrimination with the EEOC on April 4, 2012 regarding the discrimination to which I was subjected based on my age (60 at the time of my termination).

2.    Harm Summary

Evidence of Respondent's retaliatory conduct includes the following:

a) Within approximately three (3) business hours of filing the Charge and sending Respondent a courtesy copy, Respondent shut off my access to Respondent's system network.

b) Within approximately six (6) business hours of filing the Charge and sending Respondent a courtesy copy, Respondent changed the locks to the building where I conducted my business.

c) Immediately prior to my systems access being shut off and being locked out of my building, I had a telephone call with Mr. McConnaughey, my manager, during which he became accusatorial. I told my manager that I viewed his comments as both threatening and clearly retaliatory given that these actions were taken so soon after I filed the Charge of Discrimination. I informed him that I felt his threats were punishing me for filing the Charge. Mr. McConnaughey did not deny my statements.

B.          1.    Respondent's Stated Reasons

a) Respondent's stated reason for shutting off my system access is that I refused to discuss letters that I sent to my current clients with my manager and Human Resources;

b) Respondent's stated reason for shutting off my system access is pretextual;

c) Respondent's stated reason for changing the locks is that Respondent was closing the Pennsylvania Office; and

d) Respondent provided no further reason for changing the locks and closing down the Pennsylvania office within one business day of my filing a Charge of Discrimination and sending Respondent a courtesy copy.

**EEOC Charge of Discrimination**
**Page 3 of 3**
**Douglas Pyle v. Ameriprise Financial**

C.                    1.    Statutes and Basis for Allegations

I believe that Respondent has discriminated against me based on
my age (61) in connection with my compensation and my termination, and
retaliated against me based on my complaints about the same, in violation
of the Age Discrimination in Employment Act, as amended, 29 U.S.C.
§621, *et seq.* ("ADEA") and the Pennsylvania Human Relations Act, as
amended, 43 P.S. §951, *et seq.* ("PHRA").

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**Douglas Pyle v. Ameriprise Financial, Inc. – Second Charge**

EEOC No. _____

You have the right to file this charge of discrimination with the Pennsylvania Human Relations
Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC
protects your state rights, especially since there may be circumstances in which state and federal laws
and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are
unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be
dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with
your signature under the verification below, will constitute filing with the PHRC. You have chosen
EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept
EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to
file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency,
the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is
required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file
your complaint in state court. PHRC will inform you of these rights and obligations at that time.
**[Sign and date appropriate request below]**

 X  I want my charge filed with PHRC. I hereby incorporate this form and the verification below into
the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to
PHRC.

 X   *I understand that false statements in this complaint are made subject to the penalties of 18
Pa.C.S. §4904, relating to unsworn falsification to authorities.*

X   _Douglas Pyle July 24, 2012_
     Signature and Date (Douglas Pyle)

# EXHIBIT 2

| CHARGE OF DISCRIMINATION | | AGENCY<br>FEPA<br>x   EEOC | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form.   State/Local Agency: PHRC | | | 530-2012-02082 |

| NAME (Indicate Mr., Ms., Mrs.)<br>**Douglas Pyle** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>▇▇▇▇▇▇▇ |
|---|---|

| STREET ADDRESS<br>▇▇▇▇▇▇ | CITY, STATE AND ZIP<br>**St. Davids, PA  19087** | DATE OF BIRTH<br>▇▇▇▇ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Ameriprise Financial, Inc.** | NUMBER OF EMPLOYEES, MEMBERS<br>**>10,000** | TELEPHONE (Include Area Code) |
|---|---|---|

| STREET ADDRESS<br>**123 West Wayne Avenue** | CITY, STATE AND ZIP<br>**Wayne, PA  19087** | COUNTY<br>**Delaware** |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Race   Color   Sex   Religion   National Origin<br>Retaliation   **XX**Age   Disability   Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Earliest*                                    *Latest*<br>Continuing Violation |
|---|---|

THE PARTICULARS ARE:

A.    1. Relevant Work History

I was hired by Radnor Capitol as a Portfolio Manager in or about April 8, 1996. Radnor Capital was sold to U.S. Trust, which was acquired by Charles Schwab, who then sold it to Bank of America, who then sold its Columbia Management division to Ameriprise on or about May 5, 2010. Since working at Ameriprise, I assumed the position of Managing Director, reporting to Robert McConnaughey, Head of Equities (42).* Mr. McConnaughey reports to Colin Moore, Chief Investment Officer of Columbia Management Group (60), who reports to William F. "Ted" Truscott, CEO, U.S. Asset Management (55). Mr. Truscott in turn reports to James Cracchiolo, Chairman and Chief Executive Officer.

Throughout my tenure with Respondent, I have been a loyal, dedicated and hard-working employee. In April, 2010, Mr. Moore commended me on my candor and integrity, stating that they are a credit to the company. In February, 2011, I received a fifty-thousand dollar ($50,000) discretionary bonus for my 2010 performance results.

*All ages herein are approximate.

| XI want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct. | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| x<br>Date:  *Douglas Pyle (Charging Party Signature)*<br>*April 4, 2012* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

EEOC Charge of Discrimination
Page 2 of 4
Douglas Pyle v. Ameriprise Financial

2.    Harm Summary

I believe that Respondent discriminated against me based on my age (61).
Evidence of discriminatory conduct and bias against older employees includes,
but is not limited to, the following:

a) My direct supervisor Mr. McConnaughey is forty-two (42) years of age,
   approximately nineteen (19) years younger than I am.

b) Of the other approximately twenty-five Managing Directors reporting to Mr.
   McConnaughey, the majority are substantially younger than I am: most are in
   their late thirties to early forties.

c) On or about January 7, 2010, I had a meeting with Mr. McConnaughey, who
   told me that I would be terminated effective some time prior to May 5, 2010,
   the closing date of Ameriprise Financial's purchase of Columbia Management
   from Bank of America. Surprised, I stated "this is because of my age, isn't it."
   Mr. McConnaughey did not deny it, and instead asked me how old I was. I
   told him that I was fifty-nine (59) years old. Mr. McConnaughey then asked
   me when I would be sixty (60) years old. I told him that I would turn sixty (60)
   on February 5, 2011. After I told Mr. McConnaughey this, I told him that I
   would accept a decrease in salary if it meant I could retain my employment.

d) Later that afternoon, Mr. McConnaughey called me and asked if I would
   accept a thirty-three and one-third percent (33.3%) pay cut and a
   discretionary bonus. If I agreed to that, I could remain employed for one year,
   which he said would "get me past sixty," at which time everything would be
   reconsidered. I agreed to this offer.

e) I am not aware of any younger worker who was told to take a pay cut or else
   be terminated.

f) Respondent has a pattern and practice of terminating older employees, which
   includes, but is not limited to, the following:

   a. Respondent terminated Dave Williams, Managing Director (68),
      effective April 2011

   b. Respondent terminated Michael Hoover, Managing Director (57) on
      June 30, 2011.

   c. Respondent terminated Elisabeth Schwan, Vice President (55).

   d. Respondent terminated Andrea Funk, Assistant Vice President (53).

### EEOC Charge of Discrimination
#### Page 3 of 4
#### Douglas Pyle v. Ameriprise Financial

g) On or about April 7, 2010, I attended a meeting scheduled by Mr. Moore. The meeting was captioned "2012 End State for Manufacturing," which I later learned was code for a meeting with older individuals to determine their work-life plans in furtherance of Respondent's efforts to remove certain older employees from the workforce. At this meeting, I stated that I planned to stay in the business for ten more years.

h) On or about June 30, 2011, I met with Mr. McConnaughey for what was scheduled as my mid-year review. Instead, I was told that I was going to be terminated. Mr. McConnaughey told me that the reason for my termination was that my investments results were too volatile. Mr. McConnaughey asked me to stay on through December 31, 2011 and participate in the August 23, 2011 Board of Directors meeting. I agreed to this.

i) In November, 2011, Mr. McConnaughey called me to ask if I would remain with Respondent through March 31, 2012. I agreed to this.

j) In February, 2012. Mr. McConnaughey asked me if I would remain with Respondent through April 30, 2012. I again agreed.

k) On March 27, 2012, Respondent informed me I was being let go due to an alleged reduction in force.

B.        1.    Respondent's Stated Reasons

       a) On June 30, 2011, Respondent's alleged reason for terminating me was that my investments results were "too volatile."

       b) On March 27, 2012, Respondent informed me I was being let go due to an alleged reduction in force.

       c) Respondent has not offered any further explanation of its reason for terminating me; and

       d) Respondent's stated reason for my termination is pretextual. Respondent had previously acknowledged that volatility was a feature of my particular investment approach. Respondent's repeated requests to extend my services indicate that Respondent saw no risk in continuing my portfolio management duties. In addition, Respondent has changed its reason for terminating me.

**EEOC Charge of Discrimination**
**Page 4 of 4**
**Douglas Pyle v. Ameriprise Financial**

C.          1.      Statutes and Basis for Allegations

      I believe that Respondent has discriminated against me based on my age (61) in connection with my compensation and my termination in violation of the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621, *et seq.* ("ADEA") and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

RECEIVED - EEOC
PHILADELPHIA.D.O.
2012 APR 5 P 3:28

INFORMATION FOR COMPLAINANTS & ELECTION OPTION
TO DUAL FILE WITH THE PENNSYLVANIA HUMAN
RELATIONS COMMISSION

**Douglas Pyle v. Ameriprise Financial, Inc.**

EEOC No. 530-2012-02082

You have the right to file this charge of discrimination with the Pennsylvania Human Relations Commission (PHRC) under the Pennsylvania Human Relations Act. Filing your charge with PHRC protects your state rights, especially since there may be circumstances in which state and federal laws and procedures vary in a manner which would affect the outcome of your case.

Complaints filed with the PHRC must be filed within 180 days of the act(s) which you believe are unlawful discrimination. If PHRC determines that your PHRC complaint is untimely, it will be dismissed.

If you want your charge filed with the PHRC, including this form as part of your EEOC charge, with your signature under the verification below, will constitute filing with the PHRC. You have chosen EEOC to investigate your complaint, so PHRC will not investigate it and, in most cases, will accept EEOC's finding. If you disagree with PHRC's adoption of EEOC's finding, you will have the chance to file a request for preliminary hearing with PHRC.

Since you have chosen to file your charge first with EEOC, making it the primary investigatory agency, the Respondent will not be required to file an answer with PHRC, and no other action with PHRC is required by either party, unless/until otherwise notified by PHRC.

If your case is still pending with PHRC after one year from filing with PHRC, you have the right to file your complaint in state court. PHRC will inform you of these rights and obligations at that time.
**[Sign and date appropriate request below]**

X I want my charge filed with PHRC. I hereby incorporate this form and the verification below into the attached EEOC complaint form and file it as my PHRC complaint. I request EEOC to transmit it to PHRC.

X  _/ understand that false statements in this complaint are made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities._   >-N

Signature and Date (Douglas Pyle)

April 12, 2012

# EXHIBIT 3

EEOC Form 161-B (10/96)

# U.S. Equal Employment Opportunity Commission

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  Douglas Pyle
~~⬛⬛⬛⬛⬛⬛~~
St Davids, PA 19087

From: Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, PH Suite 1300
Philadelphia, PA 19107-3127

[       ]     *On behalf of person(s) aggrieved whose identity is*
              *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2012-02082 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[       ]     More than 180 days have passed since the filing of this charge.

[       ]     Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[       ]     The EEOC is terminating its processing of this charge.

[       ]     The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[   X   ]     The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[       ]     The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          5/28/13
Spencer H. Lewis, Jr.  District Director          *(Date Mailed)*

Enclosure(s)

cc:   AMERIPRISE FINANCIAL, INC.
      Marjory P. Albee, Esq. (for Charging Party)
      Lisa M. Lewis, Vice President and Group Counsel ,     (for Respondent)

EEOC Form 161-B (10/96)

## U.S. Equal Employment Opportunity Commission

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

To:  Douglas Pyle

████████████████
St Davids, PA 19087

From: Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, PH Suite 1300
Philadelphia, PA 19107-3127

[    ]    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2012-03115 | Legal Unit | (215) 440-2828 |

(See also the additional information attached to this form.)

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[    ]    More than 180 days have passed since the filing of this charge.

[    ]    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[    ]    The EEOC is terminating its processing of this charge.

[    ]    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[  X  ]    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[    ]    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosure(s)

*Spencer H. Lewis, Jr.  District Director*

5/28/13

*(Date Mailed)*

cc:  AMERIPRISE FINANCIAL, INC.
Marjory P. Albee, Esq. (for Charging Party)
Lisa M. Lewis, Vice President and Group Counsel ,    (for Respondent)