IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS PYLE<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA MANAGEMENT INVESTMENT ADVISORS LLC<br><br>and<br><br>AMERIPRISE FINANCIAL, INC.<br><br>Defendants. | CIVIL ACTION NO. 13-4437 |

## PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff, Douglas Pyle, by and through his undersigned attorneys, hereby files this Opposition to Defendants' Motion for Judgment on the Pleadings and moves this Court to enter the attached Order denying Defendants' Motion. In support of his Opposition to Defendants' Motion, Plaintiff relies on the attached Memorandum of Law.

s/ Marjory P. Albee
Marjory P. Albee, Esquire
CONSOLE LAW OFFICES, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Tel:   (215) 545-7676
Fax:   (215) 545-8211

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES............................................................................ii

I.   INTRODUCTION...............................................................................1

II.  STATEMENT OF MATERIAL FACTS........................................................2

   A. Plaintiff was a long-term employee of Defendants with an excellent Performance record...................................................................... 2

   B. On January 7, 2010, Plaintiff was subjected to a discriminatory pay decision, but he was not told his employment was terminated................. 3

   C. The first notice of termination occurred on June 30, 2011, with an effective date of December 31, 2011.......................................... 4

   D. Plaintiff was ultimately terminated on March 27, 2012, with an effective date of April 27, 2012 ................................................... 5

   E. Plaintiff filed a timely EEOC Charge on April 5, 2012 ............................. 5

III. LEGAL STANDARD ........................................................................... 6

IV.  LEGAL ARGUMENT .......................................................................... 7

   A. Plaintiff's Discriminatory Discharge Claim is Timely ............................... 7

   B. Plaintiff's Compensation Discrimination Claim is Timely......................... 9

   C. Plaintiff's Retaliation Claim is Sufficiently Pled ..................................... 10

V.   CONCLUSION................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

*Bayer Chemicals Corp. v. Albermarle Corp.*, 171 Fed. Appx. 392
(3d Cir. Mar. 21, 2006) .................................................................................... 7

*Brown v. Daniels*, 128 Fed. Appx 910 (3d Cir. 2005) ............................................. 7

*Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ..................... 10,11

*Colgan v. Fisher Scientific Co.*, 935 F.2d 1407 (3d Cir. 1991) ............................ 7,8

*Delaware State College v. Ricks*, 449 U.S. 250 (1980) ......................................... 7

*Fasold v. Justice*, 409. F3d 178 (3d Cir. 2005) .................................................... 10

*Hare v. Potter*, 220 Fed. Appx. 120 (3d. Cir. 2007) ............................................. 10

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ................. 7

*Oshiver v. Levin*, 38 F.3d 1380 (3d Cir. 1993) ....................................................... 7

*Oxford Assocs. v. Waste Sys. Auth.*, 271 F.3d 140 (3d Cir. 2001) ......................... 7

*Pension Ben. Guar. Corp. V. White Consol. Industr., Inc.*,
998 F.2d 1192 (3d Cir. 1993) ............................................................................ 7

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ................................ 6

*Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004) .......................................................... 6

*Turbe v. Government of Virgin Islands*, 938 F.2d 427 (3d Cir. 1991) ..................... 6

**STATUTES**

29 U.S.C. §621 *et seq* ......................................................................................... 2,9

43 P.S. §951, *et seq* ................................................................................................ 2

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS PYLE<br><br>Plaintiff,<br>v.<br><br>COLUMBIA MANAGEMENT INVESTMENT ADVISORS LLC<br><br>and<br><br>AMERIPRISE FINANCIAL, INC.<br><br>Defendants. | CIVIL ACTION NO. 13-4437 |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.   INTRODUCTION:**

Plaintiff, Douglas Pyle, was a highly successful Portfolio Manager who worked for Defendants, Columbia Management Investment Advisors LLC and Ameriprise Financial, Inc. or their predecessor companies for nearly sixteen (16) years. When Plaintiff was age fifty-nine, Defendants forced him to take an age-discriminatory pay cut. Defendants did not deny that their conduct was age based and discriminatory. Two and a half (2 ½) years later, when Plaintiff was age sixty-one (61), Defendants notified Plaintiff that his employment was terminated. Before his last scheduled date of work, and within 300 days of being notified of his termination, Plaintiff filed an EEOC Charge complaining of

1

Defendants' age discriminatory conduct.[1] Defendants immediately retaliated against Plaintiff for engaging in protected activity by locking Plaintiff out of his office and cutting off of his email before his last day of work, causing Plaintiff further humiliation and embarrassment. Defendants' conduct is in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA").

Defendants now seek to have Plaintiff's claims dismissed pursuant to Fed. R. Civ. P. 12(c), contending that Plaintiff's age discrimination claim is untimely and that Plaintiff's retaliation claim fails to identify a materially adverse action. As explained below, Defendants' contentions are without merit and their Motion should be dismissed.

## II. STATEMENT OF FACTS:

### A. Plaintiff was a long-term employee of Defendants with an excellent performance record.

Plaintiff was continuously employed by Defendants or their predecessors since April, 1996, as a Portfolio Manager. Complaint, ¶¶ 21,22.[2] Plaintiff reported to Robert McConnaughey, Head of Equities. *Id.* at ¶23. Mr. McConnaughey reported to Colin Moore, Chief Investment of the Columbia Management Group. *Id.* at ¶ 24.[3] Throughout his employment with Defendants, Plaintiff performed his job in a highly competent manner. *Id.* at ¶ 27. For example, and without limitation, in 2010, the fund Plaintiff managed was up thirty-one percent (31%), significantly outperforming the benchmark

---

[1] Plaintiff's EEOC Charge was cross-filed with the PHRC.
[2] Defendant, Columbia Management Investment Advisors, LLC ("CMIA") is a wholly owned subsidiary of Defendant Ameriprise, Inc. ("Ameriprise") Complaint ¶ 4. At all relevant times, Ameriprise owned and controlled the operations of CMIA. *Id.* at ¶7.
[3] Plaintiff's second level supervisor, Mr. Moore reported up to Ted Truscott, who reported to James Cracciolo, Chairman and CEO of Ameriprise. *Id.*

2

index in his peer group. *Id.* Moreover, Plaintiff ranked in the top fifteen percent (15%) of all like portfolio managers in his category, small cap funds. *Id.* Defendants awarded Plaintiff a discretionary bonus for his performance in 2010. *Id.* On June 30, 2011, Morningstar mutual fund evaluators ranked Plaintiff's fund in the top seventeen percent (17%) for the ten (10) year period he managed the fund, outperforming eighty-three percent (83%) of all similar managers out of a pool of 385 small cap funds. *Id.* In the 4th quarter of 2011, Morningstar ranked Plaintiff's fund in the top sixth-to-eleventh percentile (6-11%). *Id.*

### B. On January 7, 2010, Plaintiff was subjected to a discriminatory pay decision, but he was not told his employment was terminated.

On January 7, 2010, Plaintiff had a meeting with Mr. McConnaughey who told Plaintiff that Plaintiff would be terminated at some unspecified time prior to May 5, 2010, the date Ameriprise was scheduled to close the deal on its acquisition of Columbia Management from Bank of America. *Id.* at 28; Complaint, Ex. 2, ¶ A(2)(c).[4] The explanation given was that the company was planning to consolidate the number of mutual funds. No explanation was given as to why Plaintiff was selected for termination. Complaint ¶ 29. Surprised, Plaintiff stated to Mr. McConnaughey, " this is because of my age, isn't it?" *Id.* Plaintiff was age fifty-nine (59), substantially older than McConnaughey, and was by far one of the oldest of the approximately twenty (20) portfolio managers reporting to Mr. McConnaughey. Id. at ¶¶ 30, 32,33. Mr. McConnaughey did not deny it was because of Plaintiff's age, and instead asked how old Plaintiff was and when he would turn sixty (60). Complaint, Ex. 2, ¶ A(2)(c). Plaintiff

---

[4] Plaintiff's signed, sworn EEOC Charges are attached to and incorporated in Plaintiff's Complaint as Exhibits 1 and 2. Complaint ¶¶ 17,18. Please note that these Exhibits were inadvertently reversed when appended to the Complaint, so that the First Charge appears as Exhibit 2 while the Second Charge appears as Exhibit 1.

told Mr. McConnaughey that he would turn sixty (60) on February 5, 2011. *Id.* Plaintiff told Mr. McConnaughey that he would accept a decrease in salary if it meant he could retain his employment. *Id.* Mr. McConnaughey called Plaintiff later that day and said that if Plaintiff would accept a pay cut of thirty-three percent (33%), Plaintiff could remain employed for one year, which he said would get Plaintiff "past sixty", <u>at which time everything would be reconsidered</u>. Complaint, Ex. 2,¶ A(2)(d); Complaint ¶ 37.[5] To Plaintiff's knowledge, Defendants did not require any younger employees to take a pay cut or be terminated from their employment with Defendants. Complaint, ¶ 39. Not wanting to be terminated, Plaintiff agreed to accept the discriminatory pay cut in lieu of termination. Complaint, Ex. 2,¶ A(2)(d); Complaint ¶38. Thus, the only adverse employment action taken against Plaintiff on January 7, 2010 was to reduce his salary.

### C.    The first notice of termination occurred on June 30, 2011, with an effective date of December 31, 2011.

The subject of termination was not discussed with Plaintiff again until one and a half (1 ½) years later, when, on June 30, 2011, Plaintiff met with Mr. McConnaughey for Plaintiff's mid-year review. This was months after Plaintiff's 60th birthday had come and gone and he had continued to remain in Defendants' employ. *Id.* at ¶ 36.[6] At the meeting, Mr. McConnaughey told Plaintiff that Plaintiff was going to be terminated,

---

[5] Defendants' paraphrasing of the allegations in Plaintiff's Complaint and Plaintiff's sworn Charge incorporated as an Exhibit to Plaintiff's Complaint are inaccurate and misleading. *See* Defendants' Memorandum at p. 2 ("McConnaughey agreed that Plaintiff would be allowed to remain for that limited period of time at a reduced salary.") To the contrary, as pled by Plaintiff, Mr. McConnaughey did not tell Plaintiff that Plaintiff would be terminated in one year if he agreed to take a pay cut. Rather, Mr. McConnaughey told Plaintiff that Plaintiff would not be terminated before his 60th birthday if he agreed to take a pay cut. Further, Mr. McConnaughey told Plaintiff that the issue of Plaintiff's termination would be reconsidered after Plaintiff turned sixty.

[6] In April, 2010, Plaintiff was called to a meeting with Mr. Moore, in which Mr. Moore questioned Plaintiff about his intentions regarding retirement. Complaint ¶ 40. Plaintiff told Mr. Moore that he intended to work for 10 more years. Id. at ¶ 51. There was no discussion about terminating Plaintiff. Defendants contend that Mr. Moore had similar discussions with all of the other individuals in Plaintiff's job concerning their retirement intentions. Answer at ¶ 40.

effective December 31, 2011, because his fund was "too volatile"  Complaint ¶ 42. Prior to this June 30, 2011 meeting, no adverse employment action had been taken regarding Plaintiff's termination.   Moreover, the reason given to Plaintiff for the June 30, 2011 termination decision was different from the reason Plaintiff had been given in January, 2010, when the tentative decision to terminate him was first discussed and then discarded.  *Id.* at ¶¶ 28,29,42.

D.     **Plaintiff was ultimately terminated on March 27, 2012, with an effective date of April 27, 2012.**

On November, 2011, Defendants extended Plaintiff's employment through March 301, 2012. *Id.* at ¶ 46.  In February, 2012, Defendants extended Plaintiff's employment through April 30, 2012. *Id.* at ¶ 47.  On March 27, 2012, Defendants informed Plaintiff that he was being terminated effective April 20, 2012. *Id.* at ¶ 48.  The new reason given was a reduction in force. Id. at ¶ 48.  Attached to the termination notice was an age demographic list showing that two other individuals, ages 52 and 55, were also terminated in the so-called reduction in force. *Id.* at ¶ 49.

E.     **Plaintiff filed a timely EEOC Charge on April 5, 2012**

On April 5, 2012, Plaintiff filed a Charge of Discrimination with the EEOC alleging that Defendants discriminated against him based on his age in connection with his compensation and his termination.  Complaint ¶¶ 17, 54, 58; Complaint, Ex. 2.  After Defendants were provided with a courtesy copy of the Charge on the same day, Plaintiff received an accusatory and threatening phone call from Mr. McConnaughey.  *Id.* at ¶¶ 54,55(a).  Plaintiff stated to Mr. McConnaughey his belief that he was being threatened in retaliation for complaining to the EEOC regarding Defendants' age

5

discriminatory conduct, a fact which Mr. McConnaughey did not deny. *Id.* at ¶ 55(b).[7] Within hours after learning that Plaintiff had engaged in protected activity, Defendants retaliated by changing the locks to Plaintiff's office, shutting off Plaintiff's access to his client files, and shutting down Plaintiff's computer system network. *Id.* at ¶¶ 55, 56. Defendants' actions humiliated Plaintiff, jeopardized Plaintiff's clients and made Plaintiff's continued employment through his effective termination date untenable. *Id.* at ¶¶ 57, 62; Answer, Ex. A. For that reason, Plaintiff had no choice but to tender his resignation on April 13, 2012, prior to the effective date of his involuntary termination that was scheduled for April 27, 2013. Answer, Ex. A. Defendant's retaliatory actions were materially adverse and would have discouraged a reasonable employee from complaining of discrimination. Complaint at ¶¶ 56, 57.

## III.   LEGAL STANDARD

The standard that a court applies on a Rule 12(b)(6) Motion to Dismiss is the same standard that a court applies in deciding a Motion for Judgment on the Pleadings pursuant to Rule 12(c). *Turbe v. Government of Virgin Islands*, 938 F.2d 427 (3d Cir. 1991); *See also, Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004). Under this standard, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted).

---

[7] Defendants contend that Mr. McConnaughey placed the call after learning that Plaintiff had been soliciting clients Defendants claim he was contractually forbidden from soliciting. Answer, ¶ 55. Defendants do not allege any facts that support their conclusory allegation that Plaintiff was soliciting clients. Moreover, Defendants do not allege, nor could they, that Plaintiff had a non-solicitation agreement with Defendants. Instead, Defendants refer to an alleged agreement between CMIA and Plaintiff's former employer, Bank of America. *Id.*

Similarly, "[i]n reviewing the grant of a Rule 12(c) motion, [the court] must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Bayer Chemicals Corp. v. Albermarle Corp.*, 171 Fed. Appx. 392, 397 (3d Cir. Mar. 21, 2006) (internal quotation marks and citation omitted). The pleadings include the complaint, the answer, and any "extrinsic documents" attached as exhibits to the pleadings. *Brown v. Daniels*, 128 Fed. Appx 910, 913 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. V. White Consol. Industr., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A motion for judgment on the pleadings should only be granted if plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the plaintiff's allegations. *Oxford Assocs. v. Waste Sys. Auth.*, 271 F.3d 140, 144-45 (3d Cir. 2001)

## IV.  LEGAL ARGUMENT

### A.  Plaintiff's Discriminatory Discharge Claim Is Timely

The statutory limitations period in a discriminatory discharge case begins when the employer has established its official position and made that position apparent to the employee by explicit notice. *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407 (3d Cir. 1991) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 262 n.16 (1980)). Defendants' Motion for Judgment on the Pleadings with respect to Plaintiff's discriminatory discharge claim should be denied based on the pleadings and the established case law.[8]

---

[8] Defendants' citation to *Oshiver v. Levin*, 38 F.3d 1380 (3d Cur. 1993) is unavailing. *Oshiver* stands for the proposition that the limitations period starts when the employee learns of the adverse employment action (in that case, the actual discharge), rather than when the employee learns that the adverse employment action constitutes a legal wrong. There can be no actionable discriminatory discharge claim

7

On January 7, 2010, Plaintiff was neither terminated nor given a date upon which he would be terminated in the future.  He was told that if he agreed to a pay cut, he could be assured of remaining employed through his 60th birthday.  Plaintiff was never told that he would be terminated upon reaching his 60th birthday.  To the contrary, he was told that the subject of his continued employment would be revisited at that time.  Plaintiff's 60th birthday came and went, and he remained employed by Defendants.[9]  There was no further discussion about terminating Plaintiff until June 30, 2011, when Plaintiff's supervisor, Mr. McConnaughey, verbally told Plaintiff he was going to be terminated, effective December 31, 2011.[10]  Thereafter, Defendants changed their mind no less than three times, keeping Plaintiff in their employ, until Plaintiff was finally given an official, written notice of termination on March 27, 2012, effective April 27, 2012.[11]

The applicable date that triggers the 300 day limitation period on Plaintiff's termination is March 27, 2012, when Defendants gave Plaintiff explicit notice of Defendants' official, final termination decision.  *Ricks*, 449 U.S. at 258, 262; *Colgan*, 935 F.2d at 1419.  In any event, the very earliest date on which a definitive termination

---

until an employee is notified that he is in fact discharged.  Otherwise, employers could purposefully avoid all liability under the anti-discrimination statutes by telling employees that they could be let go at some unspecified future date and then waiting 300 days before engaging in any discriminatory discharge.
[9] Defendants incorrectly contend that Plaintiff failed to plead that Defendants changed their "initial plan to terminated Plaintiff's employment.  This fact is clearly stated in Plaintiff's sworn Charge, Complaint, Ex. 2 at ¶ A(2)(d).  Moreover, it can be inferred from the pleadings that Defendants changed their mind about their initial plan.   If the Court determines otherwise, Plaintiff respectfully requests an opportunity to amend his Complaint.
[10] The purported reason given to Plaintiff for his termination on June 30, 2011 was an entirely  different reason than the reason he had been given two and a half (2 ½) years prior, when Defendants considered terminating him but decided not to.
[11] The purported termination reason given to Plaintiff in the only written notice of termination provided by Defendants, which was on March 27, 2012, was due to a reduction in force.   Plaintiff was provided with an age demographic list of other individuals terminated in the so-called reduction in force, as required by the Older Worker Benefits Protection Act, 29 USC § 626(f) ("OWBPA"). The purpose of the age demographic list requirement in the OWBPA is to allow older workers terminated in a reduction in force to make knowing and voluntary decision as to whether or not to waive their potential ADEA claims in exchange for severance.  The limitations period should not commence to run so soon that it becomes difficult for a layman to invoke the protections of the civil rights statutes. *Ricks*, 449 U.S. at 262, n. 16.

decision can arguably be said to have been made and communicated to Plaintiff was June 30, 2011, when Mr. McConaughey told Plaintiff he was terminated, effective December 31, 2011. Regardless of whether the applicable trigger date is deemed to be March 27, 2012 or June 30, 2011, Defendants' Motion must be denied because Plaintiff's EEOC Charge was timely filed within 300 days of both of these dates.

Even assuming arguendo that the applicable trigger date for Plaintiff's discriminatory discharge claim is June 30, 2011, when Plaintiff first received notice of an actual termination decision and an effective termination date, Plaintiff's Charge is timely. Three hundred days from June 30, 2011, is April 25, 2012. Plaintiff filed his EEOC Charge on April 5, 2012. Therefore, Defendant's Motion should be denied with respect to Plaintiff's discriminatory discharge claim.

### B.   Plaintiff's Compensation Discrimination Claim Is Timely

Defendants' Motion for Judgment on the Pleadings should also be denied for the reason that Plaintiff's compensation discrimination claims are timely. The ADEA, as amended, states in pertinent part:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation....when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

29 U.S.C. §626(d)(3).

Starting on or about January 7, 2010, Plaintiff was forced to take a pay cut that was age discriminatory. Consequently, each paycheck that Plaintiff received thereafter is discriminatory and constitutes a new violation that renews the statute of limitations. It

9

is undisputed that Plaintiff received paychecks within 300 days of filing his EEOC Charge. Therefore, Plaintiff's compensation discrimination claim is timely. Defendant's Motion should be denied with respect to Plaintiff's discriminatory compensation claim.

### C. Plaintiff's Retaliation Claim Is Sufficiently Pled

Defendants' Motion is premature with respect to Plaintiff's retaliation claim. Plaintiff's retaliation complaint is adequately pled. To establish a prima facie case of retaliation, Plaintiff must demonstrate 1) he engaged in protected activity; 2) he was subjected to an adverse action by the employer after or contemporaneous with the employee's protected activity; 3) the adverse action was "materially adverse"; and 4) there was a causal connection between the protected activity and the employer's adverse action. (*Fasold v. Justice*, 409. F3d 178, 188 (3d Cir. 2005). A "materially adverse" employment action is one that might well dissuade a reasonable employee from making a charge of discrimination. *Hare v. Potter*, 220 Fed. Appx. 120, 128 (3d. Cir. 2007) (citing Burlington N. & Sante Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405 (2006). A plaintiff can meet his burden by demonstrating that an employer's conduct is likely to deter victims of discrimination from complaining about discrimination. Id. A jury is not required to find that the challenged actions were related to the terms or conditions of employment, in order to find that the employer's actions were "materially adverse." *Burlington N. & Sante Fe Ry. Co.*, 548 U.S. at 70. Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of the words used or physical acts performed. *Hare*, 220 Fed. Appx. At 128 (quoting

10

Burlington, 548 U.S. at 68.)  Context matters.  <u>Burlington N. & Sante Fe Ry. Co.</u>, 548 U.S. at 69.

Defendants seek to dismiss Plaintiff's retaliation claim based upon the bald and erroneous assertion that their actions toward Plaintiff after he engaged in protected activity were not materially adverse.  Defendants benignly couch their egregious conduct as a "decision to close the office."  However, as the pleadings show, Defendants' conduct was far from benign.  Without any warning, and while Plaintiff was still actively employed by Defendants, Defendants locked Plaintiff and Plaintiff's staff out of the office building where they worked, denied Plaintiff access to his client files, and abruptly cut off his email.  Plaintiff was embarrassed and humiliated by Defendant's retaliatory conduct.  Moreover, he was unable to properly service his clients, and he was forced to resign before his last scheduled date of employment, at which time Defendants stopped paying him.  Defendants' conduct might well have dissuaded a reasonable person in the same position from filing a Charge.   Plaintiff has adequately pled the elements of his retaliation claim, and Defendants' motion must be denied.

## V.    **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings in its entirety.

Respectfully submitted,

<u>s/ Marjory P. Albee</u>
Marjory P. Albee, Esquire
CONSOLE LAW OFFICES, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA  19102
Tel:    (215) 545-7676
Fax:   (215) 545-8211

Dated:  September 6, 2013                            Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Marjory P. Albee, Esquire, hereby certify that Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings was served via ECF, this day of **September 6, 2013,** upon the following:

>Paul Nofer, Esquire
>Klehr Harrison Harvey Branzburg LLP
>1835 Market Street
>Philadelphia, PA 19103
>
>Edward B. Magarian
>Christopher Amundsen
>Dorsey & Whitney LLP
>50 South Six Street, Suite 1500
>Minneapolis, MN 55402

>**CONSOLE LAW OFFICES LLC**
>
>BY: /s/ Marjory P. Albee
>Marjory P. Albee, Esq.
>1525 Locust Street,
>9th Floor
>Philadelphia, PA 19102
>
>Attorney for Plaintiff,
>Douglas Pyle