IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOUGLAS PYLE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 13-CV-4437 |
| | : | |
| v. | : | **Honorable Michael M. Baylson** |
| | : | |
| COLUMBIA MANAGEMENT INVESTMENT | : | |
| ADVISORS, LLC and AMERIPRISE | : | |
| FINANCIAL, INC., | : | |

Defendants.


## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS


KLEHR HARRISON HARVEY
BRANZBURG LLP

Paul G. Nofer (Pa. I.D. No. 52241)
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania  19103
pnofer@klehr.com
(215) 569-3287 – Telephone
(215) 568-6603 – Facsimile

*and*

Edward B. Magarian
(admitted *pro hac vice*)
Christopher Amundsen
(admitted *pro hac vice*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, Minnesota  55402
magarian.edward@dorsey.com
(612) 340-2600 – Telephone
(612) 340-2868 – Facsimile

Counsel for Defendants

<u>**TABLE OF CONTENTS**</u>

**INTRODUCTION** ................................................................................................ 1

**DISCUSSION** ................................................................................................ 2

    **A.  Plaintiff Applies The Wrong Legal Standard** .................................................. 2

    **B.  Plaintiff's Retaliation Theory Is Not Plausible** ............................................. 3

    **C.  Plaintiff's Termination Claim Is Untimely** ................................................... 5

    **D.  Plaintiff Abandoned His Untimely PHRA Claims** ...................................... 3

    **E.  Plaintiff Did Not Plead Plead An Adequate Pay Discrimination Claim** ..................... 9

**CONCLUSION** ................................................................................................ 9

PHIL1 3057959v.1

## INTRODUCTION

Plaintiff confidently proclaims that Defendants' motion for judgment on the pleadings is without merit and should be denied.  However, Plaintiff's proclamation of confidence is misplaced, having based it not only on Plaintiff's selective citations to the pleadings, but on outdated and incorrect legal standards governing a motion for judgment on the pleadings.

Applying the correct legal standards to the actual allegations leads inexorably to the conclusion that Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA") simply cannot succeed as a matter of law.

First, Plaintiff's discriminatory discharge claims under the ADEA and the PHRA are untimely by more than one year.  Plaintiff even effectively concedes that his PHRA claim— which has a 180 day limitations period—is untimely.

Second, Plaintiff's retaliation theory fails to set forth a plausible case, as required by *Iqbal* and *Twombly*, where, as here:  (1) the termination decision was made, and the exact date for the termination set, before Plaintiff even filed his charge of discrimination; (2) Plaintiff's office was closed after the charge was filed, but only three weeks earlier than the actual termination date; (3) Plaintiff's compensation and benefits were left unchanged even after the closure up until Plaintiff's resignation; (4) the closure occurred after Plaintiff engaged in conduct in violation of Company policy; and (5) Plaintiff resigned prior to the actual effective date of his termination.

Third, Plaintiff's unpleaded claim that his pay was negatively impacted because of his age is contradicted by his allegation in his Complaint that reduced compensation was part of a bargain he made with Defendants to forestall the end of his employment.

1

These and other flaws, which are evident from the pleadings in this case and the relevant well-settled authority, require dismissal of Plaintiff's Complaint with prejudice.[1]

## DISCUSSION

### A.    Plaintiff Applies The Wrong Legal Standard

A motion for judgment on the pleadings is determined by the same standard that applies to a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim.  *Ober v. Brown*, 105 Fed. Appx. 345, 346 (3d Cir. 2004).  The lesser standard cited in Plaintiff's "Motion" In Opposition To Defendants' Motion For Judgment On The Pleadings (Dkt. No. 11) ("Plaintiff's Opposition"), was changed by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and confirmed in *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  Contrary to the Plaintiff's assertions, to survive a Rule 12(c) motion to dismiss, a plaintiff must now show that the pleadings contain sufficient factual matter "to state a claim to relief that is plausible on its face," that the claims in the Complaint "allege enough facts to raise [plaintiff's] right to relief above the speculative level," and that the Complaint has contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

Plaintiff's Opposition ignores *Iqbal* and *Twombly* completely.  Instead, it relies on cases decided before the 2009 *Iqbal* decision, all of which deploy the motion to dismiss standard as it existed before both cases were decided.  *See* Pl. Br. at 6-7.  Because of this approach, Plaintiff does not even attempt to describe how its claims would meet the "plausibility" requirement established by the U.S. Supreme Court.   As described below, they do not meet this standard.

---

[1]    Plaintiff asserts in his brief that, in addition to his discriminatory discharge and retaliation claims, he also pled a discriminatory pay claim.  This theory was not listed in either Count I or Count II of his Complaint, and the allegations that purportedly support it are buried deeply within his discharge and retaliation claims.

Plaintiff also does not acknowledge the fact that motions under Fed. R. Civ. P. 12(c) are resolved by reference to *all* the pleadings, including the complaint, the answer, and any "extrinsic documents" attached as exhibits to the pleadings. *Brown v. Daniels*, 128 Fed. Appx. 910, 913 (3d Cir. 2005); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Ben. Guar. Corp. v. White Consol. Industr., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiff's motion proceeds as though the Complaint is the only pleading in the record, but that is not the case, and this approach undermines several aspects of Plaintiff's arguments.

### B.    Plaintiff Abandoned His Untimely PHRA Claims

First and foremost, Plaintiff does not even make an attempt to defend his untimely PHRA claim. He mentions the PHRA just once, in the introduction to his brief. *See* Pl. Br. at 2. He does not discuss the statute again, or make any attempt to explain how his state law claims might be timely. *See generally* Pl. Br. As Defendants explained in their Opening Brief, Plaintiff's PHRA claims are subject to a 180-day limitations period, which expired long before Plaintiff filed his first Charge of Discrimination on April 5, 2012. *See* Defendants' Opening Br. at 5.

Plaintiff tacitly admits this claim is untimely. Even in Plaintiff's own best case (though incorrect) scenario identifying June 30, 2011 as the latest possible date for the beginning of the limitations period, *see infra*, his PHRA limitations period would have ended on December 27, 2011, which is several months before he filed his Charge of Discrimination. Therefore, Plaintiff cannot rebut Defendants' arguments in their Opening brief, and cannot show his state law claims are timely. His PHRA claims should be dismissed with prejudice.

### C.    Plaintiff's Retaliation Theory Is Not Plausible

Plaintiff's failure to use the appropriate Rule 12 standard first arises in his attempt to save his ADEA retaliation claim. Pl. Br. 10-11. Plaintiff's Opposition asserts that Plaintiff's

3

Complaint sets forth an "adequately pled" retaliation case, but Plaintiff does not explain why his claim is plausible, nor can he do so.

Consider the contours of Plaintiff's theory. Plaintiff learned on January 7, 2010 that his time at Columbia Management Investment Advisors would be coming to an end at an unspecified date in the future. Complaint ¶28. On June 30, 2011, he was reminded of this fact. *Id.* ¶42. On March 27, 2012 (still before Plaintiff filed his charge), he was informed that his final date had been determined and that his office would close and his job elimination would take effect four weeks later on April 27, 2012. *Id.* at ¶48.

In response to this news, Plaintiff filed a charge of discrimination with the EEOC, and also began sending out solicitations to potential clients that he and every other employee of CMIA was barred by contract from soliciting. *See* Answer ¶¶55-56. When Defendants learned about the improper solicitations, which put them at significant legal risk, they decided to close Plaintiff's office three weeks earlier than he expected. *Id.* Defendants did not stop paying Plaintiff at that time, intended to continue paying him through April 27, 2012, and intended to pay him severance benefits after April 27, 2012. *Id.* Plaintiff then, for unclear reasons of his own, decided to resign rather than continue to receive salary and severance pay Defendants intended to provide him. *Id.* at ¶56, Ex. A.

On these allegations, there is no plausible argument that Defendants actions were sufficiently adverse to "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (holding that a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, [which means that it] might have dissuaded a reasonable worker from making or supporting a charge of discrimination."); *Swain v. City of Vineland*, 457 Fed. Appx. 107 (3d

4

Cir. 2012) (holding that the analysis focuses not on isolated incidents, but on a review of the "overall scenario" to determine if any materially adverse action occurred).

Plaintiff does not show he suffered *any* material disadvantage from Defendants' conduct. Plaintiff *does not* dispute that he experienced any kind of pain or change of circumstance–financial or otherwise–from Defendants' actions in April 2012.  He *does not* dispute that Ameriprise did nothing to cause the premature end of Plaintiff's salary and severance.   He *does not* dispute that the only impact Defendants' actions had on him was to relieve him of any expectation to perform services for Defendants a mere three weeks sooner than initially expected.

Therefore, Complaint does not "nudge [Plaintiff's retaliation] claims across the line from the conceivable to the plausible," *Twombly* 550 U.S. at 551, and that aspect of it should be dismissed with prejudice.  *Burlington N.*, 548 U.S. at 67 (The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . We speak of material adversity because we believe it is important to separate significant from trivial harms); *see Harman v. York City Sch. Dist.*, 2013 U.S. Dist. LEXIS 89106 (M.D. Pa. June 24, 2013) (rule 12 dismissal of termination and retaliation claims because plaintiff failed to "allege that he was fired, demoted, reassigned, disciplined, or that he lost benefits due to these events," and could not show he was "dissuaded from complaining of discrimination"); *Flaig v. Aladdin Food Mgmt. Servs.*, LLC, 2012 U.S. Dist. LEXIS 152013 (W.D. Pa. Oct. 23, 2012) (rule 12 dismissal of claim that a transfer was a retaliatory action because plaintiff did not suffer any material changes to his employment because of the transfer).

### D.      Plaintiff's Termination Claim Is Untimely

Plaintiff's Opposition likewise fails to save his ADEA discriminatory termination claim from being dismissed as untimely.  The limitations period on that claim was 300 days.  *See* 42

U.S.C. 2000e-5(e); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 383 (3d Cir. 2007).  Well-settled Third

Circuit law, which Plaintiff does not and cannot dispute, holds that the limitations period begins

to run when a plaintiff learns the defendant made a decision the plaintiff considers

discriminatory.  *See Oshiver v. Levin*, 38 F.3d 1380, 1384 (3d Cir. 1993); *Baker v. Gichner*

*Shelter Sys.*, 2013 U.S. Dist. LEXIS 103645 (M.D. Pa. June 28, 2013); *Winder v. Donahoe*, 2012

U.S. Dist. LEXIS 117049 (E.D. Pa. Aug. 17, 2012).

For Plaintiff, this period began to run on January 7, 2010, when, as Plaintiff put it,

"McConnaughey met with Plaintiff and told Plaintiff that Plaintiff was going to be terminated,"

and "Plaintiff expressed to Mr. McConnaughey Plaintiff's belief that the decision to terminate

Plaintiff's employment was based on Plaintiff's age."  Complaint ¶¶28, 31.  His limitations

period on his ADEA discriminatory termination claim ended on November 3, 2010,[2] 300 days

after he learned that Defendants had decided to terminate him.  But Plaintiff waited over a year

after that period expired to file his April 5, 2012 Charge.  Therefore, this aspect of his Complaint

should be dismissed.  *See Hanani v. N.J. Dep't of Envtl. Prot.*, 205 Fed. Appx. 71, 76 (3d Cir.

2006) (affirming dismissal of Title VII claim as untimely, because limitations period began to

run when employee learned she had been taken out of the running for a promotion, and not when

someone else was eventually selected for the promotion instead).

To avoid this result, Plaintiff makes several arguments based on immaterial distinctions

that actually do not justify a different result. The first is that, because Defendants did not know

the exact date of his termination on January 7, 2010, and did not give him written notice of its

decision, his limitations could not have started at that time.  Plaintiff does not and cannot cite any

cases to support either of these purported rules.  It is well-settled that, when plaintiff learns that a

---

[2]   The limitations period on his PHRA claims ended sooner, on July 6, 2010, 180 days after
January 7, 2010.  *See supra* at 3.

decision has been made to carry out a discriminatory action, the date the actual discriminatory decision is to take effect *does not affect* the limitations period in any way. *See Colgan*, 935 F.2d at 1421; *Winder*, 2012 U.S. Dist. LEXIS 117049 at *3 ("the proper focus of the statute of limitations inquiry is on the time of the discriminatory act, not the point at which the consequences of the act become painful."). And there is no authority to suggest that plaintiffs who are terminated without written notice are entitled to a limitless limitations period.

Plaintiff's next contention is that, hidden somewhere within the Complaint is an allegation that Defendants changed their mind and decided they would *not* be terminating him in a future reduction in force, only to change their mind again by making a second discriminatory decision to terminate Plaintiff on June 30, 2011. *See* Pl. 8. This is merely argument in Plaintiff's brief, and does not reflect the actual pleading. Instead, it is clear from the Complaint that Defendants informed Plaintiff he would be terminated at a date in the future, and that eventually Defendants decided on April 27, 2012 as Plaintiff's last day. *See* Complaint ¶28 ("McConnaughey met with Plaintiff and told Plaintiff that Plaintiff was going to be terminated…"). Plaintiff eventually admits in a footnote that he never explicitly alleges that Defendants changed their minds, when he states that Defendants' changed minds can be "inferred" from a general review of the Complaint as a whole. *See* Pl. Br. 8. n.9.

Plaintiff also suggests that a sufficient allegation is buried deep within his first Charge of Discrimination, which was attached as Exhibit 2 to his Complaint. Pl. Br. 8. This argument is also incorrect; the referenced statement in that charge states only that someone at Defendants told Plaintiff that, after he turned 60, it was possible they might reconsider their decision to terminate his employment. *See id.* But nothing in the Complaint, the Answer, or their exhibits

7

suggests that Defendants ever actually reconsidered this decision,[3] and there is no dispute about whether Defendants ever changed their mind. Plaintiff was, after all, set to be terminated on April 27, 2012.  Complaint ¶48.

Plaintiff then argues in a footnote that Defendants gave him different "reasons" for his termination on January 7, 2010, June 30, 2011, and March 27, 2012, and that the limitations period started over with each of these new "reasons."  *see* Pl. Br. 8 n.10.  This argument is a red herring.  Of course Plaintiff's actual argument in this case is that Defendants' actual reason all along was Plaintiff's age.  What Plaintiff argues here is that the limitations period starts over each time a new alleged *pretext* is offered for a discriminatory decision.[4]  He does not and cannot provide a single citation to support this argument, because this rule does not exist.

Finally, Plaintiff claims that, for equitable reasons, the limitations period should start on March 27, 2012, because that is when he received the disclosures required by the Older Workers Benefits Protection Act, and it was "difficult" for him as a "layman" to determine that he was the victim of age discrimination before receiving those disclosures.  *See* Plaintiff Br. 8 n. 11.  This argument has no merit, because Plaintiff alleges in his Complaint that he concluded the decision to terminate him was based on his age on January 7, 2010.  Complaint ¶28.

---

[3]   Plaintiff's Complaint is lacking this allegation because he could not, in good faith, include it. The clear facts of this case, which will emerge during discovery if this claim is not dismissed, are that Defendants never changed their mind about Plaintiff's termination.

[4]   Plaintiff is wrong about Defendants reason, and about the suggestion that Defendants gave him several different explanations, thought the Court need not rely on that fact to dismiss this aspect of Plaintiff's Complaint.  But if Defendants are required to fill out a record in this case, they will show without dispute that at each step, CMIA clearly communicated to Plaintiff that they had decided to terminate him as part of a reduction in force based on the performance of his fund.

8

### E.      Plaintiff Did Not Plead An Adequate Pay Discrimination Claim

Finally, Plaintiff does not plead a plausible pay discrimination claim. This theory would need to demonstrate that either direct or circumstantial evidence exists to show that Plaintiff's age was the but-for cause of him having a lower salary than similarly situated younger workers.

But Plaintiff admits that his age was not the cause of his reduced salary directly in his Complaint.  As Plaintiff describes, the pay cut was part of a compromise he worked out with McConnaughey in exchange for Defendants agreement to permit him to stay employed by Defendants for an additional period of time that would result in an advantageous retirement position.  *See* Complaint ¶¶35-37.  The fact that the Complaint sets this rationale out in unambiguous terms in Paragraphs 35 ("McConnaughey asked when Plaintiff was going to turn sixty,") 36 ("Plaintiff told McConnaughey that he would turn sixty in February 2011"), and 37 ("McConnaughey told Plaintiff that if he agreed to a [pay cut], Plaintiff could remain employed by Defendants [until he was] past the benchmark age 60 for purposes of his Bank of America pension"), is fatal to Plaintiff's *post hoc* attempt to add a pay discrimination claim to this case. This claim, to the extent it exists, should also be dismissed with prejudice.[5]

## CONCLUSION

Plaintiff's Opposition simply cannot save his claims.  Therefore, Rule 12 relief is appropriate, and Defendants respectfully request that Plaintiff's Complaint be dismissed with prejudice.

---

[5]   If the unpleaded discriminatory pay claim were all that remains after this motion, Plaintiff's potential relief will be significantly limited, as the only hard damages he would be able to pursue would (at most) be the difference between his salary before and after the pay cut.   He will not be entitled even request any back pay or front pay.

9

Dated:  September 13, 2013                Respectfully Submitted,

                                         KLEHR HARRISON HARVEY
                                         BRANZBURG LLP


                                         By:   Paul G. Nofer
                                         Paul G. Nofer (Pa. I.D. No. 52241)
                                         1835 Market Street, Suite 1400
                                         Philadelphia, Pennsylvania  19103
                                         pnofer@klehr.com
                                         (215) 569-3287 – Telephone
                                         (215) 568-6603 – Facsimile

                                         *and*

                                         Edward B. Magarian
                                         (admitted *pro hac vice*)
                                         Christopher Amundsen
                                         (admitted *pro hac vice*)
                                         DORSEY & WHITNEY LLP
                                         50 South Sixth Street, Suite 1500
                                         Minneapolis, Minnesota  55402
                                         magarian.edward@dorsey.com
                                         (612) 340-2600 – Telephone
                                         (612) 340-2868 – Facsimile

                                         Counsel for Defendants

PHIL1 3057959v.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Reply Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings was served upon the following on September 13, 2013:

<u>*Via the Court's electronic filing system*</u>

Marjory P. Albee
Console Law Offices LLC
1525 Locust Street, 9th Floor
Philadelphia, PA  19102

/s/ Paul G. Nofer_____
Paul G. Nofer

1